CITY OF BOSTON *vs.* EDMUND L. DOLAN & others.

Suffolk.    May 14, June 28, 1937. — September 18, 1937.

Present: RUGG, C.J., CROSBY, DONAHUE, LUMMUS, & QUA, JJ.

*Trust*, Charitable, Identity of trustee, Distinction between individual and trust capacities of trustee, What constitutes, Constructive. *Municipal Corporations*, Charitable trusts, Officers and agents. *Boston. Fiduciary. Equity Jurisdiction*, To enforce trust, Remedy at law. *Constitutional Law*, Trial by jury. *Equity Pleading and Practice*, Appeal, Findings by judge, Requests and rulings, Parties, Bill, Jury issues, Waiver, Brief before Supreme Judicial Court.

A judge hearing a suit in equity cannot be required to pass upon requests, filed at the trial, for findings of specific facts.

Neither requests for rulings of law nor action by the trial judge thereon have any technical standing on appeal in a suit in equity.

The city of Boston held the legal title to certain trust funds under the management of trustees or commissioners acting as its agents, and was entitled to maintain a suit in equity against its treasurer to compel him to account for secret and illicit profits made by him personally in dealing with such funds; but it could not maintain such a suit as to his dealings with the trust funds of the incorporated Trustees of the Public Library of the City of Boston, or of the incorporated Trustees of the City Hospital of the City of Boston, those corporations and not the city having the legal title to their funds.

A trustee having legal title to a trust fund need not designate himself as trustee in bringing a suit in equity against his agent to require an accounting of illicit profits made by the agent in dealing with the fund.

A bill in equity, by a city as the holder of the legal title to sundry trust funds which were managed by different boards and commissions, to require its treasurer to account for secret and illicit profits made by him personally with respect thereto was not multifarious.

The treasurer of the city of Boston occupied a fiduciary relation with respect to its trust funds and, regardless of a possible remedy at law, could be compelled by it to account in equity for secret and illicit profits made by him personally in dealing with them.

The defendant in a suit to compel a fiduciary to account for secret and illicit profits made by him personally was not entitled to a trial by jury as of right; and a denial thereof where the issues related to a number of funds and numerous and complicated transactions showed a wise exercise of discretion.

A point was not argued and was treated by this court as waived where the only mention of it in the brief of the party raising it was a mere statement that the trial judge erred.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 14, 1935.

The suit was transferred to the Superior Court and heard by *Hanify*, J. From decrees entered by his order and by order of *Walsh*, J., the defendant Dolan appealed.

*T. H. Mahony & M. Wingersky*, for the defendant Dolan, submitted a brief.

*H. E. Foley*, Corporation Counsel, (*L. H. Weinstein*, Assistant Corporation Counsel, with him,) for the plaintiff.

LUMMUS, J. This is an appeal by the defendant Dolan, hereinafter called simply the defendant, from a final decree ordering him to pay to the plaintiff the sum of $131,161.90, consisting of money gained by him illegally and in breach of his official and fiduciary duties to the plaintiff, together with interest thereon from the dates of his several gains, amounting to $40,417.67 at the date of the final decree, September 23, 1936. The bill has been dismissed as to all other defendants. The case comes here on a report of all the evidence, accompanied by a voluntary report of the facts by the trial judge. There are also appeals from certain interlocutory decrees.

Since 1923 the defendant has been in the stock and bond brokerage business for himself in Boston under the name of E. L. Dolan Company. He was thoroughly experienced in the buying and selling of municipal bonds and other securities. He continued during the time of the transactions in question to be familiar with the market for municipal bonds and with its literature.

On October 24, 1929, the defendant caused to be incorporated the Legal Securities Corporation, with an authorized capital stock of one thousand shares, for the purpose of conducting a general stock brokerage business. The defendant furnished all the capital, and owned and controlled the corporation at all times.

The defendant was appointed and qualified as acting treasurer of the plaintiff city of Boston on January 25, 1930, and became treasurer on March 26, 1930. He remained such until January 11, 1934. In these offices he was not only in charge of the current funds, receipts and

expenditures of the plaintiff, but was also the custodian of many permanent and trust funds held by the plaintiff, and was charged with the duty of investing them.

The defendant bought from Legal Securities Corporation the bulk of the bonds purchased by him as city treasurer. In such purchases he grossly discriminated in its favor. He bought from it for the city at prices which he knew were excessive bonds which had been offered to him shortly before by other dealers at lower prices and bonds which he could have bought in the market or even on the stock exchange at lower prices. In some instances, in order to conceal the magnitude of the purchases from Legal Securities Corporation, he bought bonds for the city ostensibly from an impecunious broker named Dever, who was furnished the bonds by Legal Securities Corporation which took almost all the profit. Frequently the defendant as city treasurer paid Legal Securities Corporation for the bonds before it had to pay for them, so that the city furnished capital for its business. The profits made by Legal Securities Corporation, which was the defendant, in his transactions with himself as city treasurer, amounted to the sum stated in the final decree.

The foregoing summary of the facts has been derived from the findings of the judge. It is true that in equity findings of fact made by a judge are open to review in this court upon the reported evidence, subject to the familiar rule concerning the weight to be given findings upon contradictory evidence made by a judge who has actually seen and heard the witnesses. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 83–84. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 407, *et seq.* But in this case, though the evidence is reported, the defendant does not argue that the findings just summarized are wrong. We have no occasion, therefore, to review them upon the evidence, except with respect to the specific points discussed later in this opinion.

The defendant filed one hundred eighteen requests "for findings of fact and rulings of law." So far as these were requests for specific findings of fact, the judge was not

required to consider them in an equity case any more than in an action at law. *Ashapa* v. *Reed*, 280 Mass. 514, 516. *Kohutynski* v. *Kohutynski*, 296 Mass. 74, 77. In equity, a party entitled to appeal from a decree may require the judge to "report the material facts found by him." G. L. (Ter. Ed.) c. 214, § 23. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 214, 215. But he has no right to catechize the judge as to specific facts. *Merrill* v. *Everett*, 293 Mass. 327.

So far as the requests were for rulings of law, it is now settled that such requests are unnecessary and have no technical standing in an equity case brought up on appeal. *Graustein* v. *Dolan*, 282 Mass. 579, 583, 584. *Stoneham Five Cents Savings Bank* v. *Johnson*, 295 Mass. 390, 393. *National Radiator Corp.* v. *Parad*, 297 Mass. 314, 319. The fact that the trial judge saw fit to deal with them specifically gives them no importance. All the evidence is reported, and it becomes the duty of this court on appeal to enter a correct decree on the findings and the evidence, with reference to every matter argued, regardless of the views of the law entertained by the court below. *Estey* v. *Gardner*, 291 Mass. 303, 307. See also *Howland* v. *Stowe*, 290 Mass. 142, 146. So far as the subject matter of these requests has been argued, it will be considered upon the appeal from the final decree.

The defendant contends that the city of Boston is not the proper plaintiff as to many of the trusts and funds in question, because it has not the legal title. Where money or other property is given to a municipal corporation upon a charitable trust, a provision that the management of the trust shall be in the hands of a board of trustees does not necessarily divest the municipal corporation of the legal title and vest it in the trustees. Often such a gift has been construed to make the municipal corporation the technical trustee, holding the legal title, and the so called trustees merely an agency entrusted with the duty of management. *Ware* v. *Fitchburg*, 200 Mass. 61. See also *Worcester City Missionary Society* v. *Memorial Church*, 186 Mass. 531, 538; *Attorney General* v. *Lowell*, 246 Mass. 312; *Adams* v. *Plunkett*, 274 Mass. 453, 465; *Emergency Fleet Corp.* v.

*Western Union Telegraph Co.* 275 U. S. 415. This has heretofore been said to be the situation of the George Robert White fund (*Stoneman* v. *Boston,* 263 Mass. 255, 260), and held to be the situation of the Franklin fund (*Higginson* v. *Turner,* 171 Mass. 586; *Boston* v. *Doyle,* 184 Mass. 373; *Boston* v. *Curley,* 276 Mass. 549), these being two of the funds involved in this case. In *Attorney General* v. *Parker,* 126 Mass. 216, 220, a charitable bequest to a town was indeed held to vest title in trustees provided for by the will; but the trustees were named in the will, and were expressly authorized to incorporate themselves. In other cases the gift has been to the trustees, and not to the municipality. *Nelson* v. *Cushing,* 2 Cush. 519. *Cary Library* v. *Bliss,* 151 Mass. 364. *Trustees of the Boston Public Library* v. *Rector of Trinity Church,* 263 Mass. 173.

The sinking funds of the city of Boston are its property, though "set . . . apart" in the hands of commissioners for the purpose of accumulation and the discharge of its debts. St. 1875, c. 209, §§ 4, 5. R. L. (1902) c. 27, §§ 12, 14. *Burr* v. *Boston,* 208 Mass. 537, 542, 543. If title were in them, it would have to pass from the city to them, since the funds come from the city, and then back from them to the city to enable the city to pay the debt. The title to the retirement funds of the city of Boston, held under St. 1922, c. 521, is in the city. The retirement board is merely an administrative department of the city (§ 4), and reports to the city. § 20. Although the retirement act includes employees of Suffolk County as well as those of the city of Boston, such employees are paid by the city. *Hibbard* v. *County of Suffolk,* 163 Mass. 34. The Teachers' Retirement Fund, established by St. 1900, c. 237, is held by the city treasurer, subject to the "control" of a board of trustees. In large part the fund consists of money reserved by the city from the salaries of teachers. We think that the legal title to the fund is in the city. The Permanent School Pension Fund, established by St. 1908, c. 589, St. 1910, c. 617, Spec. St. 1915, c. 304, and Spec. St. 1919, c. 206, § 5, is held by the city treasurer, subject to the "care and investment," "charge and control" of a board of trustees whose secre-

tary is the secretary of the school committee. The fund consists principally of money raised by the city by taxation. We find nothing to lead to a conclusion that the title passed from the city to the trustees. The Police Charitable Fund was established by ordinance in 1870 and altered in 1890. Three city officials are trustees, but they are subject to the orders of the city council. The fund consists of money belonging to the city, and title in our opinion remains in the city. St. 1913, c. 117, which created the Cemetery Trust Fund, plainly implies that title to it is in the city.

It seems unnecessary to discuss separately all the trust funds in question, especially as the defendant has not done so. We have examined the evidence as to all that the defendant has made the subjects of argument, and find none in which the title of the city to the fund can be doubted, with the exception of those to be discussed.

The Billings, Bradlee, Cutter, Kimball, Pierce and Whitney funds consist of gifts or bequests to the "public library" or "city library" of Boston, or to the "trustees of the public library of the city of Boston." By St. 1878, c. 114, the trustees of the public library of the city of Boston were made a corporation by the name of the Trustees of the Public Library of the City of Boston, with "authority to take and hold real and personal estate to an amount not exceeding one million dollars, which may be given, granted, bequeathed or devised to it, and accepted by the trustees for the benefit of the public library of the city of Boston or any branch library, or any purpose connected therewith." In all these instances the gift or bequest was accepted by the trustees of the public library, and not by the city council. The statute provided that all securities belonging to the corporation should be placed in the custody of the city treasurer, who should invest money received by the corporation under the direction of the finance committee of the city. The trustees were removable by the city council, and the city council was empowered to pass ordinances as to the duties and authority of the trustees. See also Spec. St. 1919, c. 116; St. 1931, c. 50, which give the direction of investment to the corporation.

We think that the gifts and bequests mentioned in the last preceding paragraph were in legal effect to the trustees of the public library, and that the corporation created by St. 1878, c. 114, and not the city, holds the legal title to the funds. Perhaps *Trustees of the Boston Public Library* v. *Rector of Trinity Church*, 263 Mass. 173, is not an authority for that proposition, for the corporation of the trustees could obtain instructions as to its duties whether it held legal title or not. *Drury* v. *Natick*, 10 Allen, 169, 175. On the other hand, *Ware* v. *Fitchburg*, 200 Mass. 61, is not an authority against it, for the gift was to the city of Fitchburg and the corporation called the Burbank Hospital was formed primarily for the purpose of carrying out the trust. Though the corporation of the Trustees of the Public Library of the City of Boston is in one sense a municipal agency, it is empowered to hold property and to be a donee or legatee. The gifts and legacies in question were made to the trustees or to the library in their control, and not to the city. They were accepted by the trustees, and not by the city council. The city cannot recover in the right of the library corporation. Similar considerations apply to the Winter fund, a bequest to the Boston City Hospital, incorporated under the name of the Trustees of the City Hospital of the City of Boston by St. 1880, c. 174, with powers similar to those of the library trustees. See also St. 1932, c. 215. The principal sum ordered paid by the final decree must be reduced by the amount of profit obtained by the defendant from these funds, and the final decree must be modified accordingly. This change will necessitate a modification as to the interest. The decree after rescript will of course bring up to its date the computation of interest. *Rudnick* v. *Rudnick*, 281 Mass. 205, 208.

With the exceptions already discussed, the profits taken by the defendant were taken from funds the legal title to which was in the plaintiff. The bill seeks to restore those profits to the plaintiff. As between the parties, the plaintiff is the owner, and the fact that it owns subject to a trust is of no concern to the defendant. The plaintiff

properly brought suit in its own name, without any addition describing itself as trustee. *Davis* v. *Charles River Branch Railroad*, 11 Cush. 506, 509. *Boyden* v. *Partridge*, 2 Gray, 190, 194, 195. *Hawkins* v. *County Commissioners*, 2 Allen, 254, 258. *Ashton* v. *Atlantic Bank*, 3 Allen, 217, 220. *Bromley* v. *Mitchell*, 155 Mass. 509, 512. *Hull* v. *Newhall*, 244 Mass. 207, 209. *Holbrook* v. *Lackey*, 13 Met. 132, 134. *Stafford* v. *Gold*, 9 Pick. 533. *Western Railroad* v. *Nolan*, 48 N. Y. 513. Am. Law Inst. Restatement: Trusts, § 280, comment h. See also *Kaufman* v. *Federal National Bank of Boston*, 287 Mass. 97, 101, 102, and cases cited; *Gerber* v. *Berstein*, 295 Mass. 132. The case of an executor or administrator is quite different. *Eaton* v. *Walker*, 244 Mass. 23. Decisions in this Commonwealth have indeed recognized in equity cases that a trustee in his capacity as such may be a different party from the same person as an individual; but such decisions have been made in cases in which, unlike the present case, the trust capacity has been important. *Cochrane* v. *Forbes*, 265 Mass. 249, 255, 256. *New England Oil Refining Co.* v. *Canada Mexico Oil Co. Ltd.* 274 Mass. 191, 198, 199.

The fact that the capacity of the plaintiff as trustee is not important in this case, affords a complete answer to the contention of the defendant that the bill is multifarious. *Metropolitan Trust Co. of New York* v. *Columbus, Sandusky & Hocking Railroad*, 93 Fed. 689, 691. The plaintiff sues in a single right, that of legal owner, to redress wrongs of a single character committed by a single defendant. There is no inflexible rule by which to determine whether a bill in equity is multifarious. *Hays* v. *Georgian Inc.* 280 Mass. 10, 22, 23. *Farquhar* v. *New England Trust Co.* 261 Mass. 209, 216. *Spear* v. *H. V. Greene Co.* 246 Mass. 259, 269. *Raynes* v. *Sharp*, 238 Mass. 20, 25. Different causes of suit may be so connected that they may be joined in one bill. *Dunphy* v. *Traveller Newspaper Association*, 146 Mass. 495, 499. *Stodder* v. *Rosen Talking Machine Co.* 241 Mass. 245, 249. *Cosmopolitan Trust Co.* v. *Mitchell*, 242 Mass. 95, 123. *Robertson* v. *Hirsh*, 276 Mass. 452, 454. "The general principle is, that the court will not,

on the one hand, encourage an unnecessary multiplicity of actions, and, on the other hand, will not allow the plaintiff to join in his bill a multiplicity of different and distinct matters, so as to embarrass the defendant in his defence, or to produce confusion, or to render the case complicated and difficult to be understood." *Robinson* v. *Guild,* 12 Met. 323, 328. See also *Reno* v. *Cotter,* 236 Mass. 556, 562, 563; *Cedar* v. *Superior Credit Corp.* 276 Mass. 197, 200. In the present case, it is not true "that different causes of action are joined which cannot properly be tried together." *Sylvester* v. *Boyd,* 166 Mass. 445, 446. On the contrary, it would be absurd to split up the subject matter of the bill and try it piecemeal. *Bay State Gas Co.* v. *Lawson,* 188 Mass. 502, 505. *Digney* v. *Blanchard,* 226 Mass. 335, 339. *Shields* v. *Thomas,* 18 How. 253, 260. *Bracken* v. *Rosenthal,* 151 Fed. 136.

The defendant contends that the bill will not lie because the plaintiff has a plain, adequate and complete remedy at law. But as city treasurer the defendant was a fiduciary. As such he could be compelled to account in equity like a trustee, regardless of a possible remedy at law, and could not be permitted to retain a secret profit made in transactions conducted for the city. The saying, "Public office is a public trust," is more than mere rhetoric. *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 73. *Boston* v. *Santosuosso, ante,* 175. *United States* v. *Carter,* 217 U. S. 286, 306. *Minneapolis* v. *Canterbury,* 122 Minn. 301, 307, 308. *Butte* v. *Goodwin,* 47 Mont. 155, 163. *Judevine* v. *Hardwick,* 49 Vt. 180, 185. *Milwaukee* v. *Drew,* 220 Wis. 511, 518, 519. *Crane Township* v. *Secoy,* 103 Ohio St. 258. *Toronto* v. *Bowes,* 4 Grant's Ch. 489, affirmed in *Bowes* v. *Toronto,* 6 Grant's Ch. 1; 11 Moore P. C. 463. St. 1909, c. 486, § 8. G. L. (Ter. Ed.) c. 268, § 9. Dillon, Mun. Corp. (5th ed.) § 772. Am. Law Inst. Restatement: Trusts, §§ 170, 205, 206. See also *Newburyport* v. *Spear,* 204 Mass. 146, 149; *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479, 485; *Cann* v. *Barry,* 293 Mass. 313, 316; and the cases collected in 49 Harv. Law Rev. 559, *et seq.* Therefore we need not consider

whether jurisdiction in equity in this case could be based also on the existence of complicated accounts. *Bartlett* v. *Parks*, 1 Cush. 82, 85, 86. *Badger* v. *McNamara*, 123 Mass. 117. *Kaufman* v. *Buckley*, 285 Mass. 83, 85. *Fenno* v. *Primrose*, 116 Fed. 49. *Goffe & Clarkener, Inc.* v. *Lyons Milling Co.* 26 Fed. (2d) 801. The right of town officers in this Commonwealth openly to contract with the town (*Sylvester* v. *Webb*, 179 Mass. 236; compare G. L. [Ter. Ed.] c. 268, § 9), does not impair the general principle that the treasurer of a city or town is a fiduciary, nor justify him in reaping a secret profit from contracts made by him for the municipality.

The fact that the case falls within a branch of equity jurisdiction well known at the time of the adoption of our Constitution in 1780 shows that the defendant could not claim trial by jury as a matter of right. *Parker* v. *Simpson*, 180 Mass. 334, 344, *et seq.* *Commissioner of Banks* v. *Harrigan*, 291 Mass. 353. The appeal brings up, it is true, the further question whether jury issues should have been framed as a matter of discretion. *Harris* v. *Mackintosh*, 133 Mass. 228, 231. *Long* v. *George*, 296 Mass. 574, 579. But plainly the matters to be tried were so numerous and complicated that an attempt to present them to a jury would have resulted in confusion. The judge exercised his discretion wisely in declining to frame issues for a trial by jury. *Commissioner of Banks* v. *Harrigan*, 291 Mass. 353, 357.

The defendant saved a number of questions of evidence, but he has not argued them beyond asserting in his brief as to each that the judge erred. That is not argument. Rule 2 of the Rules for the Regulation of Practice before the Full Court (1926) (252 Mass. 585) requires a "brief . . . signed by counsel, of the points on which he intends to rely, and the authorities intended to be cited in support of them, arranged under the respective points." The rule contemplates not only a list of the problems presented to the court but also some aid in solving them. An examination of the questions of evidence saved discloses no miscarriage of justice requiring correction notwithstanding the

failure of the defendant to assist us by argument. They must be deemed waived. *Commonwealth* v. *Dyer*, 243 Mass. 472, 508. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 247 Mass. 334, 346. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 519. *Mullen* v. *Sewer Commissioners of Milton*, 280 Mass. 531, 537. *Universal Adjustment Corp.* v. *Midland Bank, Ltd. of London*, 281 Mass. 303, 328. *Berry* v. *Old South Engraving Co.* 283 Mass. 441, 449. *DeSantis* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 315, 322. *Allard* v. *Estes*, 292 Mass. 187, 197. *Carangias* v. *Market Men's Relief Association, Inc.* 293 Mass. 284.

The result is, that the interlocutory decrees are affirmed, and that the final decree is modified as hereinbefore stated, and as modified is affirmed.

*Ordered accordingly.*