WOODROW McKAY; L. M. GRIMES, SR.; JAMES ADDERTON; T. C. HINKLE; J. T. LOWE; W. F. WELBORN; CHAS. E. WILLIAMS, AND J. R. McALPINE, III, TRUSTEES OF THE CAROLINE E. FORD AND MARTHA A. HADEN HOME AND TRUSTEES OF THE CAROLINE E. FORD AND MARTHA A. HADEN ENDOWMENT FUND, v. THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES AND THE PRESBYTERIAN FOUNDATION, INC.

(Filed 10 December, 1947.)

**1. Judgments § 30—**

In a suit to invoke the equitable jurisdiction of the court to permit trustees to sell part of the realty to preserve the purpose of the charitable trust, decree authorizing sale by the trustees necessarily adjudicates title in the trustees, and is conclusive as a holding *in rem* in a subsequent suit for authority to sell the remaining property, even though the charity which, in the second suit, asserts its right to control and administer the trust funds as trustee to carry out the purpose of the trust, was not a party to the prior suit.

**2. Appeal and Error § 40d—**

The identity of the trustees entitled to possession and control of trust funds is a question of law to be determined by a proper construction of the will creating the trust, and is not a question of fact as to which the appellate court is bound by the finding of the trial court.

**3. Trusts § 6—**

Testatrix devised certain realty to the "Presbyterian Church in the United States" for a home for widows of ministers of that denomination, and set up a trust fund to endow the home and appointed as trustees of the endowment fund the trustees of the local church and the minister thereof and another local minister, their "successors to be chosen as occasion may require" by the General Assembly of the denomination. *Held:* The local trustees as designated by testatrix are entitled to the control and management of the trust funds in accordance with intent of testatrix as gathered from the entire instrument.

**4. Trusts § 27—**

Testatrix set up a trust fund under the control and management of local trustees to maintain a home for widows of ministers of a designated denomination. The trustees of the denomination contended that the funds should be turned over to them for administration on the ground that the funds in themselves were insufficient for the purpose of the charity and that they were administering other funds for the same charitable purpose. *Held:* It not appearing that the local trustees were incapable of effectuating the purpose of the trust within the intent of trustor, the exigencies presently presented are insufficient to justify a court of equity in discharging as trustees those selected by the testatrix for the administration of the fund.

PETITIONERS' appeal from *Hamilton, Special Judge,* at September-October Civil Term, 1947, of DAVIDSON.

Caroline E. Ford, of Davidson County, N. C., died in 1909, leaving a will making certain various bequests and devises of which Item 23 and Item 27 are pertinent to the present controversy:

"Item 23. I give and bequeath to R. Baxter McRary for the period of his natural life that of my home place bounded by Hargrave Street on the East, Robert's Heirs' line on the North, a line on the West so drawn as to include my grave, orchard and spring, this line to be parallel with Hargrave Street and on the South by R. Baxter McRary's line. I direct that all the remaining part of my home place be sold publicly or privately, as my executor hereinafter named, may deem best, and the moneys arising from such sale, that is to say, the principal, shall be wisely and safely invested by my executor hereinafter named, and shall constitute a perpetual fund, the interest or income of which shall be paid into the hands of the said R. Baxter McRary for his exclusive use and benefit during the period of his natural life.

"At the death of R. Baxter McRary, I give and devise my said homeplace to the 'Presbyterian Church in the United States' for and as a home for needy widows of Presbyterian Ministers in said Church; and it is my will that the principal referred to above in this Item as arising from the sale of the remainder of my homeplace shall, after the death of R. Baxter McRary, revert to the Trustees hereinafter named as a permanent Endowment fund, in trust for the purposes aforesaid and the proceeds or income from said Endowment fund shall be annually available and used for the maintenance of said home, which shall be known as the 'Caroline E. Ford and Martha A. Haden Home,' and I appoint as trustees for said 'Home' and 'Endowment Fund' the Trustees of the First Presbyterian Church in Lexington, N. C., the Pastor for the time being, together with one other Presbyterian Minister, the first of whom shall be Rev. W. P. McCorkle; their successors to be chosen as occasion may require, by the 'General Assembly' of the Presbyterian Church in the United States."

"Item 27. All the rest and residue of my property, both real and personal, not hereinbefore disposed of, I desire sold and the proceeds arising from such sale, together with any money that may be on hand I wish to be added to the perpetual fund arising from sale of remainder of homeplace, and the same to be invested and the income paid to R. Baxter McRary as directed in Item 23, and at his death, the principal arising from all sources in this Item to be placed in the Endowment fund as directed in Item 23."

After the death of the testatrix and during the lifetime of Baxter McRary, the Trustees of the Home and the life tenant joined in a pro-

ceeding in the Superior Court of Davidson County through which the court, in the exercise of its equitable jurisdiction and because of changed conditions, ordered a sale of part of the home place and directed the proceeds paid over to the trustees, the Petitioners, after the death of the life tenant, to be held by them in the same plight as the land was devised and would have been held if same had not been sold. Subsequently this order was approved by this Court in *Ex Parte Wilds,* 182 N. C., 705, 110 S. E., 57, the Respondent herein not having been made a party to the action. This fund, known as the "site fund," amounted to $31,893.67, which was combined by the executor of the will with the "Endowment Fund," then amounting to $21,000, and invested by him as a single fund. On the death of the life tenant in 1946 the successor to Caroline Ford's executor paid over to the trustees, the present Petitioners, the combined fund. The funds suffered some depreciation in the securities comprising them and now amount to about $42,000, of which the assets of the Endowment Fund constitute 39.77 per cent and the assets of the "Site Fund" 60.23 per cent.

The Petitioners brought the present proceeding in Davidson Superior Court, invoking its equitable jurisdiction to sell the rest of the Home Place in order to preserve the trust and effectuate its real purpose; and asked that they be declared the sole owners, as trustees, of the remaining portion of the home place, as well as the "site fund" and the "endowment fund" of which they had been made trustees, and that the funds be paid over to them for further custody and administration.

The Respondents joined in the request that the sale be made but claimed the right to the custody of the funds as holder of the legal title, and administration thereof through its own agency created for execution of similar trusts.

The court entered a judgment ordering a sale of the property as petitioned, but ordered that the proceeds, together with the other funds derived from the will, be turned over to the Respondent for its permanent custody and administration.

From that part of the judgment awarding custody of the trust funds to the Respondent, the Petitioners appealed.

*Don A. Walser and Charles W. Mauze for Petitioners, appellants.*
*Neal Y. Pharr and J. Spencer Bell for Respondent, appellee.*

Seawell, J. We question whether, within the limitations imposed upon us, we may, in the present case, discharge the trustees appointed in the will and turn the trust fund over to the respondent for administration by its own agency without, in a measure, denying to the testator the *jus disponendi* or defeating the testamentary intention without just reason.

The respondent claims custody of the trust fund as a matter of right, contending that the will directly conveys to it the legal title in trust for the purposes named; and that it may now assert that right against the petitioners, local trustees; and cite cases which recognize the distinction between a trustee to hold the title of the trust *res* and a trustee to manage and control: I Bogart, Trusts and Trustees, Sec. 122; *City of Boston v. Dolan,* 298 Mass., 346, 10 N. E. (2d), 275; *Worcester City Missionary Soc. v. Memorial Church,* 186 Mass., 531, 72 N. E., 72; *Adams v. Plunkett,* 274 Mass., 453, 175 N. E., 60; *Ware v. City of Fitchburg,* 200 Mass., 61, 85 N. E., 951. In reply the appellants call our attention to *Ex Parte Wilds,* 182 N. C., 705, 110 S. E., 57, as expressing a contrary view as to the legal title.

In the *Wilds case,* a part of the lands included in the trust created in Item 23 was sold on petition of the local trustees and the purchaser refused to accept the commissioner's deed on the ground that the latter could not convey a good title because the petitioning trustee had none. The Court thought otherwise. It is said in the opinion that the specific objection made was that title could not vest in the petitioning trustees until the termination of the life estate of McRary. But we cannot assume that the vigilance of the Court would permit it to hold that the title presently vested or would ever vest in the petitioners unless such was the effect of the will; and the construction of the will in this respect was directly involved in the issue of good title.

While the present respondent was not a party to that action and the Court acted without reference to the doctrinal questions now raised, we are inclined to hold that the construction of the will under these circumstances is binding upon us in the present controversy as an expression *in rem* from which we may not consistently depart.

If the respondent could now make good on its theory respecting the title, it would seem to have uncovered a situation of which it might have taken advantage long ago, and we see no exigency which could moot the question now, or disturb a *modus vivendi* admittedly legal, and certainly blueprinted in the will.

The identity of trustees, for this or that purpose, is not a question of fact as to which we are bound by the finding of the trial court, but a question of law involving the proper construction of the will; and the intent of the testatrix to give the custody and administration of the property and funds to the petitioning trustees admits of little doubt.

In considering what might be the dominant purpose of the will it is clear that the testatrix intended to provide a home and care for the widows of Presbyterian Ministers; but the "dominant purpose" cannot always be separated from the complex of which it is a part; and we feel that under the circumstances of this case Mrs. Ford intended that her beneficences might have local supervision by the trustees designated by

her will; that the memorials which they constituted as far as might be possible should also have a site amongst the churches with which she was affiliated and perhaps amongst the people that she knew.

It is contended now that even if the home might be constructed upon the property which is left to them, that the funds set up would be entirely inadequate to maintain it; but it is further suggested that it is planned to have a similar home instituted and maintained in the City of Greensboro, in aid of which the fund donated by the testatrix might be more consistently used.

However this may be, we are of the opinion that the exigencies upon which the equitable intervention of the Court is urged may be exercised are presently not of a nature which would justify the relief demanded or to justify the Court in discharging the petitioners as trustees and of ordering the custody and administration of the fund to the respondent and its agencies as demanded.

That portion of the judgment authorizing and directing the sale of the property described in the petition is affirmed. And that portion ordering the trust funds into the custody and administration of respondent is reversed. The cause is remanded to the Superior Court of Davidson County for judgment in accordance with this opinion.

Modified and affirmed.