## ATTORNEY GENERAL *vs.* JAMES O. PARKER.

Middlesex. Jan. 18, 1878. — Jan. 2, 1879. COLT & ENDICOTT, JJ., absent.

A testator by his will left a sum of money to a town, the principal of which was to be managed by a board of trustees named in the will and their successors in office, all of whom, except one, were to be chosen by the remaining members of the board, and he was to be chosen by the town. The income of the fund was to be applied to the support of a high school for the benefit of the youth of the town, under the superintendence of the trustees, the town having the right to examine into the state of the school, and of the fund, and of the doings of the trustees. An information in equity, filed by the Attorney General at the

relation of a committee appointed by the town, against one of the trustees, alleged that he had been appointed treasurer by the other trustees, and had acted as such for several years; that, on another trustee being appointed treasurer, the defendant refused to pay a part of the funds to the new treasurer, and refused to make known to the board the amount in his hands, or the manner of investment, and to apply any part of it to the purposes of the trust. *Held*, on demurrer, that a failure to make " due application of funds given to public charities," within the Gen. Sts. *c.* 14, § 20, was sufficiently alleged; but that all the other trustees from the beginning of the ·trust, and, *it seems*, the town, should have been made parties defendant.

INFORMATION IN EQUITY by the Attorney General, at the relation of a committee of the town of Shirley. The defendant demurred to the information. The case was heard by *Soule*, J., on the information and demurrer, and reserved for the determination of the full court; and appears in the opinion.

*T. H. Sweetser & F. A. Worcester*, for the defendant.

*D. S. Richardson*, for the Attorney General.

SOULE, J. It appears from the information and the papers annexed thereto that Leonard M. Parker gave by his will " the sum of four thousand dollars to the inhabitants of the town of Shirley, to constitute a fund for the endowment and support of a high school for the benefit of all the youth of the town, the same to be placed under the superintendence " of certain persons named in the will, "as a board of trustees." This board, originally composed of six persons, was to consist, after five years, of five only, one going out of office at the end of each of the first four years after the organization of the board, and the other two at the end of the fifth year, the vacancies to be filled by the board, except one, which was to be filled by election by ballot by the town at a meeting called for the purpose. The board was to be organized by the choice of a chairman and secretary, and was authorized by the will to make choice of all other necessary officers, appoint teachers, and fix their compensation, determine the age, number and qualification of the pupils of the school, " and do all things needful," and was required to keep a record of its doings, and to make a report annually to the town, showing the condition of the school, the state of the fund, and the manner in which the income had been expended or invested. The board was also authorized to procure an act of incorporation with all needful powers to carry the will into effect, and " for the most effectual investment of the funds to insure to the town

their safety." The will further provided, that the principal of the fund and its accumulations should always be held sacred to the object specified; and that the income should be received and faithfully appropriated to the purposes mentioned; that "the town shall have the right, at all times, to examine into the state of the school, and of the fund, and the doings of the trustees, and to hold them to a faithful accountability." The trustees were never incorporated, and when the information was filed there was one vacancy in the board, which consisted of but four members. By a codicil, certain changes were made in the bequest, but they have no bearing on the questions before us.

The information sets forth, and the demurrer admits, that the trustees accepted the trust and elected the defendant secretary and treasurer of the board in the year 1855, and thereafter annually till the year 1872, when Seth Chandler, another member of the board, was elected secretary and treasurer; that the defendant received large sums of money and the proceeds of the sale of lands, for the purposes of the trust, and had the custody, management and investment thereof, and of the proceeds and income thereof, till the election of Chandler as treasurer; that there still is a balance in his hands, as it is believed, of five or six thousand dollars; that the defendant refuses to furnish any account of the condition of the investment of the funds in his hands, or of the income thereof, or to pay any part of it to Chandler, or apply it to the purposes of the trust; and that the board and Chandler have often demanded an account of the proceedings of the defendant as treasurer, and of the investments of income and expenditures by him. The information charges that, through the conduct of the defendant, there is danger that the fund will be wholly lost to the town and to the beneficiaries intended by the will, and asks for an account of the trust funds which he has received, from the beginning, and of all the earnings and income which he has or ought to have received, and of his lawful expenditures of the same, and of its condition and investment; and that he be ordered to pay any balance in his hands to Chandler, or such other persons as the court may order, and generally for other and further relief. The information is brought at the relation of three citizens of

Shirley, "a committee of said town chosen to collect and act upon the funds."

The defendant demurs to the information on four grounds: First. That it does not allege a breach of trust on the part of the defendant in the application of the funds, and that it is only in case of a misapplication of funds that the Attorney General is authorized to prosecute. Second. That the town of Shirley is not made a party. Third. That the co-trustees of the defendant are not made parties. Fourth. That the ex-trustees, whose terms of office have expired, are not made parties.

As to the first ground of demurrer, it is sufficient to say that the information alleges a refusal to pay a part of the funds to the treasurer of the board, a refusal to make known to the board the amount in the defendant's hands, or the manner of its investment, and a refusal to apply the income or any part of it to the purposes of the trust, which is a sufficient failure to make " due application of funds given to public charities," within the meaning of the Gen. Sts. *c.* 14, § 20, to authorize the filing of an information. But, in saying this, we are not to be understood as intimating that the right and duty, incident on general principles to the office of the Attorney General, or public prosecuting officer, to interfere in behalf of the proper administration of public charities, is diminished or narrowed by that statute. See *Parker v. May*, 5 Cush. 336.

The prayer for relief in the information is so broad as to require an investigation of the whole management of the trust fund from the beginning to the time of the election of Chandler as treasurer, in 1872. It may involve an inquiry into the propriety of investments which have proved disastrous, and of expenditures which become the subject of objection. For all these matters, the trustees for the time being are jointly responsible. The acts of the treasurer, who is an officer of their own creation, for their own convenience in the transaction of business, are their acts, and no proper investigation can be had without making them parties to it. Any decree which might be made adverse to the defendant under this information would not be binding on them, nor prevent further litigation against him at their instance, nor against them at the instance of the Attorney General. In accordance with the general principle that all persons interested

should be made parties to proceedings in equity, and that the want of such parties is good ground for demurrer, we are of opinion that the demurrer is well taken on the third and fourth grounds stated.

The will names the town of Shirley as the donee of the fund, but also directs that the fund be placed under the superintendence and direction of certain trustees, named, who are to have the power to invest it, and receive and expend the income, as well as to manage the school which is to be supported out of it, and are to fill all the vacancies in their own number, except one, which is to be filled by the town. Ordinarily, when a legacy is given to an individual, to be held by trustees, who are to pay the income to that individual, the legal ownership is in the trustees, and the rights of the beneficiary are equitable only. We think that the same principle applies here. The powers given to the trustees, as above stated, together with the further authority to apply for an act of incorporation, for the safer holding and management of the fund, are not consistent with the idea that the town was to be the owner of the legal title to the money. The fact that the trustees who were to take the property are named in the will, indicates the intention of the testator that the title to the land given for the charity should vest in them; and there is no necessity for holding, as in *Drury* v. *Natick*, 10 Allen, 169, that the town took the fee. In that case the trustees were not named in the will, but were to be elected by the town.

Nor is the town made a visitor of the charity, in the ordinary meaning of that term. The visitor of a charity, in case the fund is held by an eleemosynary corporation, has the power and duty to hear and determine all differences of the company among themselves, and generally to superintend the internal government of the body, taking as his guide the rules laid down by the founder, and, so long as he does not exceed his province, his decision is final. 2 Perry on Trusts, § 742. The authority which belongs to a visitor of a charitable corporation is given by this will to the trustees. They have absolute control of the management and government of the school and of the fund, so long as they do not violate the rules of law with reference to the management of the property. If they had obtained an act of

incorporation, pursuant to the authority so to do contained in the will, as trustees of that corporation, they would have had all the powers which belong to visitors.

It appears, however, from inspection of the will, that the testator had in mind a benefit to the town, in creating this charity, and, with this in view, required that the trustees should make report annually to the town of the state of the fund and of the school, and the manner in which the income had been expended, and authorized the town to examine into the doings of the trustees, and hold them to a strict accountability. But it is clear that the town, as a municipality, is not directly benefited by the gift. No part of the principal, no part of the income of the fund, goes into its treasury; and it has no control over its investment or expenditure. Indirectly, however, it is a beneficiary. The fund is intended to aid in educating the children of the inhabitants of the town, without distinction. It will to some extent relieve the inhabitants from the burden of taxation likely to fall on them in the endeavor, almost universal in towns in this Commonwealth, to furnish to the children a higher education than can be obtained in the common schools, as distinguished from high schools. In this indirect way the town is beneficially interested in the charity, and to such a degree that it might, if there were no other trustees, be appointed to act as trustee of this charity. *Webb* v. *Neal*, 5 Allen, 575. The town, therefore, is a proper, if not a necessary, party to a suit which involves a full investigation of the management of the trust.

It is contended, however, that the town is already a party, because the information is brought at the relation of a committee of the inhabitants chosen to collect and act upon the fund. This position is not tenable. The relators are not parties to the suit; they have no interest in the matter as to which they seek for relief; they cannot be heard by counsel nor in person. They are important to the proceedings, merely that there may be somebody responsible for costs in case it should appear that the information is unfounded. *Attorney General* v. *Butler*, 123 Mass. 304. *Attorney General* v. *Barker*, 4 Myl. & Cr. 262. This suit is brought by the Attorney General in his official capacity, for the sole purpose of inquiring into and remedying an alleged diversion of the fund from the charity for which it was

created.   The proceeding is an information purely.   As it does not immediately affect the rights of the Commonwealth, the prosecuting officer depends on the relation of persons whose names are inserted in the information as relators, and, as the suit is carried on under their direction, they are regarded as answerable to the court for the propriety of the suit and for the conduct of it.   "It sometimes happens," says Lord Redesdale, "that this person," the relator, "has an interest in the matter in dispute, of the injury to which interest he has a right to complain. In this case, his personal complaint being joined to, and incorporated with, the information given to the court by the officer of the crown, they form together an information and bill, and are so termed."   Mitf. Ch. Pl. (5th ed.) 22.   Unless the bill of the person thus interested is incorporated with the information, he is not a party to the suit.   If his bill is incorporated with the information, and it appears that he has no ground for relief, the bill is dismissed; but the information is retained if a case is made for relief for the regulation of the charity.   *Attorney General* v. *Vivian*, 1 Russ. 226.   *Attorney General* v. *East India Co.* 11 Sim. 380.   1 Dan. Ch. Pract. (5th ed.) 10.   The town of Shirley is not a party to the information, but, as the demurrer is well taken on other grounds stated, it is not necessary to express a more decided opinion on this point.

*Demurrer sustained.*